**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**PLUTARCO GIL,** an Infant, by his Mother,
and Natural Guardian, **ENEDINA SOSA,** and,
**ENEDINA SOSA,** Individually,

                    Plaintiffs,          **OPINION AND ORDER**
                                                                  **02-CV-2687 (NG)**

    -against-

**NATIONAL RAILROAD PASSENGER**
**CORPORATION and LONG ISLAND**
**RAILROAD,**

                      Defendants.
-------------------------------------------------------------x

**GERSHON, United States District Judge:**

On April 18, 2002, Plutarco Gil and his mother Enedina Sosa commenced this action against defendant National Railroad Passenger Corporation ("Amtrak") in the Supreme Court of the State of New York, Queens County, to recover damages for personal injuries sustained when plaintiff Gil was electrocuted on September 8, 2001. On May 2, 2002, the action was removed to federal court.

On August 16, 2004, Magistrate Judge Marilyn D. Go granted permission to plaintiffs to amend the complaint to include defendant adjoining landowner Long Island Railroad ("LIRR"). On appeal, this court affirmed Magistrate Judge Go's decision on September 16, 2004. On September 24, 2004, defendants LIRR and Amtrak filed an answer to the complaint as amended. Discovery, which took place under the supervision of Magistrate Judge Go, was completed on January 30, 2006. Defendants Amtrak and LIRR now move for summary judgment on two grounds: (1) defendants breached no duty owed to plaintiff, and (2) plaintiff's own unlawful conduct was the proximate cause of his injuries. Additionally, defendant LIRR argues that, as an adjoining landowner, it owed no

1

duty to plaintiff. For the reasons set forth below, defendants' motion for summary judgment is granted, and the complaint is dismissed.

## I. Factual Background

Unless otherwise noted, the following facts are not in dispute. Plaintiff Gil ("plaintiff") was a seventeen year old high school student at the time of the accident. In the early evening on September 7, 2001, plaintiff left his house to play handball for two to three hours at Skillman Park in Queens. After sunset, he and two friends traveled by subway to Davis Street to go to the Phun Phactory ("Phactory"), a large warehouse on which they could paint "legal" graffiti. Although his two friends had been to the Phactory before, plaintiff had not. That night, the three of them spent approximately four hours at the Phactory.

After midnight, plaintiff and his friends decided to "venture" in order to observe graffiti on the Sunnyside Yards ("SSYD") railroad tracks near the Phactory. Plaintiff knew that graffiti was illegal on the streets, but he thought it was legal on railroad property. At SSYD, plaintiff hoped to "get ideas how to graffiti, how to get styles" and "learn." Prior to that night, plaintiff had seen SSYD when he had taken the subway, and he knew it to be a gathering location. Plaintiff also testified that he knew trains run on electricity, but that he thought that the SSYD tracks were abandoned. Although "No Trespassing" signs were posted at the outside parameter of SSYD, plaintiff testified that he did not see them.

Plaintiff and his friends gained access to SSYD by going around a fence that had no holes at the end of Davis Street. Although plaintiff did not testify as to his knowledge of what entities owned the property on which he was walking, it is not disputed that he passed over three sets of LIRR tracks and eventually traveled onto Amtrak property. There was no fence, barrier, or demarcation line that indicated where LIRR property ended and where Amtrak property began.

When plaintiff and his friends arrived that evening, approximately fifty people were hanging out, smoking, drinking, and spray-painting, in the SSYD area, which led plaintiff to believe that he was not trespassing. Although he needed to be home by 1:00 a.m. or 2:00 a.m., he stayed at SSYD because the night was "like one day of a lifetime."

Wanting an "adventure," plaintiff and his friends explored the area for about an hour, walking through high brush and around a large mound of garbage, and following footpaths. Plaintiff then ventured by himself for about ten minutes ("[T]hey wanted to adventure, and I wanted to adventure, too. They took their way, and I took my way."). On his walk, although there were multiple warning signs throughout SSYD, plaintiff did not see any of them. Finally, plaintiff arrived at the Line 4 Tunnel, which is owned by Amtrak and was well lit.[1] Although plaintiff testified that he did not know whether or not trains ran through this tunnel, there were warning signs approximately fifty feet from the Tunnel area. Plaintiff climbed to the top of the Line 4 Tunnel, which was at least fifteen feet above the railroad tracks below, and leaned under a metal railing so that he could see graffiti inside the tunnel. As he stuck his head down into the tunnel, he dropped his keys. In an effort to recover them, he lost his balance and he grabbed a catenary wire overhead to stabilize himself.

When he came in contact with the wire, he was electrocuted and sustained serious bodily injury; over eighty percent of his body was burned. Although both LIRR and Amtrak operate trains out of the Line 4 Tunnel, only Amtrak uses catenary wires. Nonetheless, when the accident

---

[1] Although plaintiff testified that the Line 4 Tunnel is in SSYD, he offered no factual basis for his belief. On the other hand, Amtrak employee Mr. Wagner, whose responsibilities include monitoring the Tunnel area, testified that SSYD is distinct from the Tunnel area and that the SSYD headquarters is one-half mile from the Tunnel. Mr. Santini, an Amtrak civil engineer for over thirty-two years, testified consistently with Mr. Wagner, specifically mentioning that SSYD ends at Queens Boulevard, which is one-half mile to the east of the Line 4 Tunnel. Finally, LIRR employee Mr. Cleary also testified that SSYD is a separate and distinct entity from the Line 4 Tunnel area.

happened at 2:00 a.m., LIRR called to have the electricity shut off. The next morning, investigators arrived at the scene to investigate and found fresh graffiti at the Line 4 Tunnel and three cans of spray paint. Although plaintiff has been arrested for prior incidents of spray-painting graffiti, he has never been charged and also testified that he did not have any cans of spray paint that night.

In the three years prior to this accident, Amtrak employees had filled out eighty-two incident reports of trespassing at SSYD. However, none of the reports specified that the Line 4 Tunnel was an area that had been the subject of a trespass report. In fact, Robert D. Santini, an assistant division engineer at Amtrak whose responsibilities in 2001 included maintenance of the Line 4 Tunnel area, testified that he did not recall ever seeing evidence that people, other than Amtrak employees, had been at the Line 4 Tunnel area in the three years prior to the accident. Moreover, Louis Coiro, a criminal investigator employed by Amtrak for over eighteen years, testified that, prior to this accident, he had never dealt with any cases involving electrocution at SSYD.

Additionally, all of the Amtrak employees testified that they did not know that graffiti was at the Line 4 Tunnel area. For example, Mr. Coiro had never seen graffiti in the Line 4 Tunnel area until he responded to the scene of this accident. He noted that a person could not see the graffiti by merely passing by the Tunnel; that person would have to "go down to an active track, [go] past a third rail, [then go] past the catenary." However, during his deposition, Mr. Coiro testified that there was a significant amount of graffiti at the Line 4 Tunnel area on the morning of the accident, and, upon viewing photographs of the area, he testified that the graffiti appeared to be layered.

## II. Standard for Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

4

of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury" to decide an essential issue in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1); *see id*. at 323.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevail, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *id*. at 587.

### III. Discussion

A landowner in New York has a duty to "act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976) (quoting *Smith v. Arbaugh's Rest*., 469 F.2d 97, 100 (D.C. Cir. 1972). These factors are considered concurrently with questions of foreseeability, which does not vary with the status of the entrant, such as trespasser, invitee, or licensee. *Id.* Rather, New York courts apply a single duty of reasonable care, where foreseeability is taken into account in the use of the land and the possibility of the injury. *Id.* Therefore, although plaintiff's undisputed status as a trespasser is not dispositive, his status and purpose on the land are factors to be considered in determining what

5

would be reasonable care. *Id.* In order to determine the foreseeability of one entering without permission, New York courts consider the facts of the case, including the location of the property in relation to populated areas, its accessibility, and whether there have been any prior incidents of trespassing, which may provide notice, in the area where the injury occurred. *Scurti v. City of New York,* 40 N.Y.2d 433, 442 (1976).

In addition to proving negligence, i.e., breach of the duty of reasonable care, plaintiff must show that such negligence was a substantial factor in bringing about the events which caused plaintiff's injuries, i.e., proximate cause. *Garcia v. City of New York*, 205 A.D.2d 49 (1st Dept. 1994). As a general matter, courts have found that the issue of whether a defendant's conduct was a substantial factor in bringing about plaintiff's injuries is a question of fact for the jury. *Leiching v. Consol. Rail Corp.*, 901 F. Supp. 95, 98 (N.D.N.Y. 1995). However, "where only one conclusion may be drawn from the established facts . . . the question of legal cause may be decided as a matter of law." *Id.* (citing *Culkin v. Parks & Recreation Dept.,* 168 A.D.2d 912 (4th Dept. 1990).

Here, in light of the prior Amtrak incident reports in SSYD and the multiple layers of graffiti at the Line 4 Tunnel area, this court cannot find, as a matter of law, that defendants were not on notice that people may trespass at the Tunnel, even though the Amtrak employees testified that they were not aware of graffiti at the exact location. However, in view of all the circumstances, the court finds, as a matter of law, that defendants did not breach the duty of maintaining their property in a reasonably safe condition, and the court finds that the proximate cause of the accident can be attributed only to plaintiff himself.

Although there were over eighty-two incident reports in the three years prior to the instant accident, the Line 4 Tunnel area was not the subject of any of the incident reports. In a similar situation, when a defendant landowner was aware that trespassers sat at the base of a dam located

6

on his property and plaintiff was not injured while sitting at the dam, but rather when she jumped from it, the appellate court affirmed the trial court's grant of summary judgment for the defendants. *Tillman v. Niagara Mohawk Power Corp.,* 199 A.D.2d 593 (3d Dept. 1993). The court reasoned that defendant, although it had some knowledge of trespassing at the dam, "could not reasonably have foreseen the recreational use of its dam by plaintiff and, therefore, was not obligated to prevent such use or make its facility safe for such use." *Id.* at 594. Here, neither Amtrak nor LIRR was required to protect plaintiff from "[his] own folly in electing to expose [him]self to a readily observable condition." *Id.*[2]

Plaintiff's reckless conduct in accessing the Line 4 Tunnel after midnight, while knowing that trains run on electricity, was of such an extraordinary nature that it constituted a superseding cause and relieved defendants of any liability. New York courts have found some situations to be so obviously dangerous to common sense that the presence of warning signs would have had no effect on a plaintiff's conduct. *See Smith v. Curtis Lumber Co.,* 183 A.D.2d 1018 (3d Dept. 1992); *Vasquez v. Consol. Rail Corp.*, 180 A.D.2d 247, 250 (3d Dept. 1992).

It is clear in this case that a sign at the precise location of the accident would not have altered plaintiff's conduct. In a similar case, the First Department affirmed the trial court's grant of

---

[2]Unlike cases involving disrepaired fences where liability has been found to lie with a defendant landowner or adjoining landowner, the fence in this case had no holes in it and was not in disrepair. *See Lukasiewicz v. City of Buffalo*, 55 A.D.2d 848 (4th Dept. 1976) (affirming a jury verdict for infant plaintiff, who was injured on railroad property, which he accessed by climbing through a hole in a fence, located ten to twelve feet from the railroad tracks, separating railroad property from a City-owned playground.). In any event, although plaintiff suggests that one way to prevent access to the railroad would be to have an uninterrupted and continuous fence surrounding the premises, railroad owners in New York do not, absent a statutory requirement, have a duty to fence their property to prevent trespassing. *Bowen v. Nat'l R.R. Passenger Corp.,* 363 F. Supp. 2d 370, 378 (2005) (citing *Munger v. Tonawanda R. Co.,* 4 N.Y. 349 (1850). If the duty were otherwise, "then the railroad could escape liability for individuals entering upon its property only by enclosing every mile of track by a fence. The law simply does not impose such an onerous burden." *Leiching,* 901 F. Supp. at 99.

summary judgment for defendant Metropolitan Transit Authority ("MTA") where plaintiff and several of his friends, all thirteen years old, trespassed onto MTA property in order to see graffiti, by "entering a darkened tunnel from the platform, proceeding on a 1000-foot excursion along the catwalk, twice crossing over the tracks in advance of an approaching train, and then tight-roping on the protective covering atop the third rail." *de Pena v. NYC Trans. Auth.*, 236 A.D.2d 209, 210 (1st Dept. 1997). The court noted that, "[t]he recklessness of this activity should have been so obvious, even to City lads of such a tender age, that the case should have been dismissed before trial." *Id.* The court noted that, "regardless of warnings that may or may not have been posted on the subway platform (which would have been superfluous, in any event, where risk and danger are obvious as a matter of common sense), to hold that these boys – clearly no strangers to the subway system – were not aware of the extreme hazard . . . would be to ignore the realities of life in this City . . . no amount of fencing at the end of the platform would have deterred them from this misadventure." *Id.* In another case, a trial court granted summary judgment for defendant railroad when plaintiff was struck by a train while walking on railroad tracks because "it is common sense not to walk on tracks, particularly on a foggy night, and in an area known to be actively used by trains." *Leiching,* 901 F. Supp. at 99. The court held that no sign would have warned the plaintiff of anything about which he did not already have knowledge. *Id. See also Brown v. LIRR,* 304 A.D.2d 601, 602 (2d Dept. 2003) ("the plaintiff's unlawful conduct in accessing the tracks at night and failing to heed the warnings of the train were so reckless as to constitute an intervening act which broke any causal connection between his injury and any alleged negligence on the part of the defendants."). Here, because plaintiff admitted to knowing that trains run on electricity on an electrified third rail, it is clear that plaintiff would not been dissuaded from his misadventure by any amount of signs or fencing.

Plaintiff overcame numerous obstacles to arrive at the Line 4 Tunnel area and become injured. With his friends, plaintiff left the Phun Phactory after midnight to explore SSYD, which he gained access to by walking around a fence, through high brush, around a mound of garbage, and over three sets of railroad tracks. Plaintiff then walked alone for ten minutes to the Tunnel area, leaned over a railing to see graffiti, and reached down a fifteen foot drop. Further, although plaintiff did not know whether trains ran through the Line 4 Tunnel, he admitted that he knew that trains run on electricity on an electrified third rail. Given these circumstances and the readily observable dangerous nature of the Line 4 Tunnel area, defendants breached no duty to plaintiff, whose conduct was a superseding cause that broke any chain of causation.[3]

## CONCLUSION

On the undisputed facts, the defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendants.

SO ORDERED.

/s/ *Nina Gershon*
NINA GERSHON
United States District Judge

Dated: August 1, 2007
Brooklyn, New York

---

[3] In light of this decision, it is unnecessary to find whether LIRR owed a duty to plaintiff. Even if a duty can be said to have existed, LIRR did not breach its duty to plaintiff, whose own conduct was the proximate cause of his injuries.

9